NOT DESIGNATED FOR PUBLICATION

No. 118,222

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JENNY MARIE CURTIS,
*Appellant*,

v.

HERMAN THEODORE MINNIS and AMBER BRITNEY CURTIS,
*Appellees*.


MEMORANDUM OPINION

Appeal from Ford District Court; SIDNEY R. THOMAS, judge. Opinion filed May 18, 2018. Appeal dismissed.


*Razmi M. Tahirkheli*, of Tahirkheli & Premer-Chavez, L.L.C., of Garden City, for appellant.


No appearance by appellees.


Before BRUNS, P.J., HILL, J., and WALKER, S.J.


PER CURIAM: Jenny Marie Curtis appeals from the district court's ruling on her petition for an injunction to stop Hermann Theodore Minnis and Amber Britney Curtis (the defendants) from interfering with her parental rights. The district court refused to grant an injunction completely prohibiting all contact between Jenny's minor daughter, C.R.D., and the defendants and instead granted an injunction stating that the defendants could have contact with C.R.D., subject to certain restrictions. But because the district court's orders have expired by their own terms, we find the issues raised to be moot and dismiss the appeal.

1

Jenny is the mother of the female minor child C.R.D., who was age 16 at the time the case was filed. In June 2017, Jenny filed a petition for injunctive relief in Ford County, alleging that Herman and Amber provided C.R.D. with cell phones and money despite knowing that Jenny was keeping those things from her daughter for the purpose of discipline. She requested that the court order the defendants to cease and desist all contact with C.R.D.

Herman is not related to C.R.D. He was a family friend. Amber is C.R.D.'s step-sister. She is the daughter of Jenny's current husband. The defendants did not file an answer to Jenny's petition.

In August 2017 the district court held a hearing at which the parties presented evidence. Highly summarized, evidence produced at the hearing indicated that Herman and Amber did, in fact, give C.R.D. cell phones and money on several occasions against Jenny's wishes and otherwise sought to circumvent and defeat Jenny's parental disciplining of C.R.D. These actions continued even after Jenny sent C.R.D. to live with C.R.D.'s adult sister in Oregon to escape contact with Herman and Amber. Evidence also showed that Herman texted C.R.D. to encourage her to hide these activities from her mother.

After the hearing, which included an in camera interview of C.R.D. by the district court, the court found:

- C.R.D. viewed the defendants as part of her support system. She saw Herman as a "father-type figure" since she was not close to her step-father and had no contact with her father. She saw Amber as a sister she could confide in. C.R.D. felt "somewhat isolated."

- An injunction prohibiting all contact would not be in the best interests of C.R.D.
- Herman and Amber acted in concert and interfered with Jenny's right to parent C.R.D.
- A text message from Herman to C.R.D. was "particularly disturbing." That text message had "the hallmarks of a potential abuser." The court did not find that was Herman's intent, but it did highlight why boundaries were needed.

The district court ordered:

- The defendants could have contact with C.R.D. by any means, provided that Jenny was aware of the contact. The defendants were to directly inform Jenny of the nature and type of contact.
- The defendants were not to give C.R.D. any money, electronic device, or gift without Jenny's knowledge and consent.
- The order remained in effect until May 1, 2018.

Jenny timely appealed from the district court's order granting her less than the full prohibition of contact with the defendants she requested in her petition. She filed a brief with this court. Neither defendant cross-appealed or filed a brief.

ANALYSIS

Although this case poses interesting questions about whether the district court's orders interfered with Jenny's constitutional rights to parent C.R.D., there is no purpose to be served by addressing those issues. As noted above, an explicit provision of the district court's orders indicated that they were to expire on May 1, 2018, which occurred prior to our consideration of this case. We have not been informed of any actions which might

3

have extended the life of the district court's decision, so we must assume it has expired by its own terms. Thus, the issues in the case have become moot, and any decision we would render would only be advisory in nature.

> "It is a well-established judicial rule the courts do not decide moot questions or render advisory opinions. The mootness doctrine is a court policy which recognizes that the role of a court is to determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such a manner that the determination will be operative, final and conclusive." *Stano v. Pryor*, 52 Kan. App. 2d 679, Syl. ¶ 4, 372 P.3d 427(2016).

In the past, this court has not hesitated to declare a case to be moot where the lower court order under consideration has expired. See *Skillett v. Sierra*, 30 Kan. App. 2d 1041, 1046, 53 P.3d 1234 (2002).

Since the allegedly improper orders of the district court are no longer in effect, there is nothing left for us to adjudicate in the case.

Appeal dismissed.